UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES P. PATTERSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15 CV 75 JMB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*. The Act authorizes judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff James P. Patterson, Jr.'s application for Disability Insurance Benefits ("DIB"). All matters are pending before the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c). The matter is fully briefed, and for the reasons discussed below, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

Plaintiff has a long and complicated history with respect to applying for various forms of Social Security benefits. Plaintiff is currently receiving Social Security Insurance benefits from an April 2012 application. (Tr. 11)[1] The instant case involves the narrow question of whether

---

[1] "Tr." refers to the administrative record filed on behalf of the Commissioner. Additionally, Plaintiff filed applications for benefits in December 2008. Those applications were denied and this Court affirmed those denials. See Patterson v. Colvin, Case No. 2:12 CV 38 NCC (E.D. Mo. May 2, 2014). On April 19, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, and on April 20, 2012, Plaintiff filed an application for DIB benefits. The present matter involves only Plaintiff's DIB application.

the onset of Plaintiff's disability occurred on August 26, 2010, which would be earlier than the previously determined onset date. (Id.) Because Plaintiff's date last insured was September 30, 2010, this case presents the even narrower question (at least in terms of time) of whether Plaintiff was disabled between August 26, 2010 and September 30, 2010.

Plaintiff's present claim was denied initially on September 30, 2012. (Tr. 11) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 11, 2014, in Hannibal, Missouri. (Id.) Plaintiff and Gary F. Weimholt, a Vocational Expert ("VE"), testified at the hearing. (Tr. 11, 31-96) Plaintiff was represented at the hearing and a significant portion of the hearing transcript involves a conversation between the ALJ and counsel regarding the record and the scope of the issue actually involved in this matter. (Id.)

In a decision dated April 14, 2014, the ALJ concluded that Plaintiff was not disabled under the Act during the time period in question. (Tr. 11-23) The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter. (Tr. 1-4) Plaintiff filed the instant action on October 30, 2015. (ECF No. 1) Accordingly, Plaintiff has exhausted his administrative remedies and the matter is properly before this Court. Plaintiff has been represented throughout all relevant proceedings.

Although the ultimate issue before the Court is whether substantial evidence supports the Commissioner's decision, Plaintiff has identified several alleged errors for this Court's review. Broadly speaking, Plaintiff contends that the ALJ failed to properly consider the onset of his cognitive/mental impairment(s). More specifically, Plaintiff argues that the ALJ should have employed the services of a medical advisor to "discuss whether Plaintiff's mental disorders could have manifested themselves before his date last insured …." (ECF No. 22 at 9) Plaintiff next argues that the ALJ erred in failing to give any weight to lay evidence regarding the onset of his

mental disorders. (Id.) Finally, Plaintiff alleges that the ALJ failed to follow the regulatory protocol applicable for determining disability when a substance use disorder is present. (Id. at 10, citing 20 C.F.R. § 404.1535).

The ALJ's decision in this matter was, by and large, very thorough, thoughtful, organized and well-reasoned. On the basis of the existing record, however, the undersigned cannot say that the ALJ's decision properly followed the regulatory protocol for determining disability when a substance use disorder is present. Accordingly, this case will be reversed and remanded for further proceedings.

## **ADMINISTRATIVE RECORD**[2]

### I. **General**

Plaintiff was 41 years old at the time of his alleged onset date. In his Disability Report – Adult form, Plaintiff listed the following conditions that impaired his ability to work: (1) depression; (2) bipolar disorder; (3) social anxiety disorder; (4) diabetes; (5) back pain; (6) high blood pressure; (7) kidney problems; (8) hypertension; (9) hyperlipidemia; and (10) fatigue. At the time of his application, Plaintiff was living in a residential care facility. (Tr. 210)

In a Function Report – Adult, dated May 3, 2012 and completed on Plaintiff's behalf by his case manager Kina St. Clair, Plaintiff listed numerous limitations regarding his ability to work. Plaintiff indicated that his impairments affected the following abilities: lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, and following instructions. (Tr. 284-91) Plaintiff's case manager also completed a Function Report Adult – Third Party, dated May 3, 2012. The case manager's report did not list as many limitations as Plaintiff listed in his own report. The case manager

---

[2] Because this case is being remanded, only those portions of the administrative record that are most pertinent to the Court's decision are specifically summarized and discussed herein.

3

indicated that Plaintiff's impairments affected the following abilities: understanding, following instructions, completing tasks, walking, memory, and concentration. (Tr. 258-65)

The record makes clear that Plaintiff's mental health and substance abuse (alcohol in particular) were issues that required consideration before the ALJ. For example, in a letter to the ALJ dated March 25, 2014, Plaintiff's attorney explained that Plaintiff's prior disability case focused on Plaintiff's

> physical ailments[,] and since the prior decision there [has been] a great deal of development in the documentation and treatment of [Plaintiff's] psychological ailments…. These records should show … that [Plaintiff] has been dealing with psychological disease [and] that his condition has worsened and his treatment has proportionately increased. You will also note that Dr. Clark opines that claimant's limitations due to his psychological impairments are significant free of alcohol and drugs.

(Tr. 309-10)[3]

## II. Administrative Hearing

On March 11, 2014, the ALJ conducted a hearing on Plaintiff's application. (Tr. 31-96) Plaintiff appeared in person, with counsel present. Appearing by telephone was Gary Weimhalt, an independent vocational expert ("VE"). (Tr. 31) At the outset of the hearing, the ALJ and Plaintiff's counsel discussed at length Plaintiff's prior case (which was then pending review in this Court),[4] the time period covered by the current application, and the scope of the record that the ALJ should consider in addressing the issues raised by Plaintiff's current application. Plaintiff's counsel attempted to persuade the ALJ that the existing record showed that Plaintiff's

---

[3] Based on the context of this letter, the prior decision referred to is the decision based on Plaintiff's 2008 application, the denial of which was affirmed by this Court in Patterson v. Colvin, Case No. 2:12 CV 38 NCC (E.D. Mo. May 2, 2014).

[4] The ALJ and counsel expressed concern as to how the outcome of the prior case might impact the instant matter. (See, e.g., Tr. 41, 44-45) Counsel emphasized that the ALJ was privy to more information regarding Plaintiff's mental health than was available in the prior case. (Tr. 46)

mental limitations existed and were documented in the record, during the relevant time period. (See, e.g., Tr. 35-37) The ALJ and counsel also discussed how Plaintiff's alcohol abuse impacted his condition. According to counsel, Plaintiff's alcohol use was not the cause of his symptoms/problems, and that Plaintiff was disabled despite "relapses" involving alcohol abuse. (See, e.g., Tr. 39)[5]

The ALJ and counsel agreed that the timeframe at issue in this case was narrow—August 26, 2010, to September 30, 2010—and that Plaintiff's mental condition eventually prevented him from working. (Tr. 42) Counsel focused the ALJ's attention largely on two specific medical events in particular—a January 2010 hospital stay after a suicide attempt, and a psychiatric hospital stay in November 2010. Both involved alcohol use. (Tr. 42-43) Counsel represented, however, that even during Plaintiff's periods of sobriety, his condition was not sufficient to permit him to "function even outside of a residential care facility." (Tr. 49)

Plaintiff also testified at the hearing in response to questions posed by counsel and the ALJ. Plaintiff testified about his January 2010 suicide attempt and hospitalization. According to Plaintiff, after the event, his depression "stuck around," and his anxiety increased. (Tr. 57-58) Plaintiff explained that, although he stopped drinking for a while, he relapsed until he began taking anti-psychotic medications. (Tr. 59) During his relapse into alcohol abuse, Plaintiff would drink a fifth of vodka per day. (Tr. 66) Plaintiff began taking Risperdal and Gabapentin in approximately May 2011. (Tr. 68) At the time of the hearing, Plaintiff indicated he had been sober for about five months, and his depression improved when he was not drinking. (Tr. 81)

Plaintiff also testified about having thoughts of people being out to get him and issues with anxiety over the years. (Tr. 61-62) At one point during the hearing, Plaintiff was given a

---

[5] At times, Plaintiff represented that his alcohol use was a form of "self-medicating" as a result of his impairments. (See, e.g., Tr. 39, 68, 77)

break so he could take his medication—Ativan. (Tr. 63)

Plaintiff also testified that, despite his alcohol abuse, he had been able to work. According to Plaintiff, it was his diabetes that finally caused him to stop working. (Tr. 77-78) Plaintiff also noted that his anxiety also interfered with his ability to work. (Tr. 82)

Gary Weimhalt, the VE, testified in response to questions from the ALJ. The ALJ asked the VE to consider a hypothetical individual having the same age, education, and work experience as Plaintiff. The hypothetical individual would further be capable of light work (occasionally lifting up to 20 pounds, and frequent lifting/carrying of up to 10 pounds). The person would be capable of standing and walking six out of eight hours, and sitting up to six out of eight hours. The individual would not climb ropes, ladders, or scaffolds, and would only occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl. The person would avoid concentrated exposure to extreme cold, vibration, and work hazards such as unprotected heights and dangerous moving machinery. The person could understand, remember, and carry out simple instructions (unskilled work), in a low stress environment with no strict production quotas or fast-paced production work, with only simple decision-making related to basic work functions. The person would tolerate only infrequent changes and only occasional contact with co-workers and supervisors, and no contact with the general public. (Tr. 87-88) The VE concluded that such an individual could not return to Plaintiff's past work, but could perform other available work, such as a housekeeper or laundry worker. (Tr. 88-89)

The ALJ next asked the VE to consider a similar hypothetical individual, with the additional restriction that the person would be distracted from work at least 20 percent of the workday, at unpredictable times. The VE opined that such a person could not maintain a job. (Tr. 90)

Plaintiff's lawyer asked the VE to consider a hypothetical worker with significant

6

interpersonal communication issues, resulting in a breakdown of communication with supervisors and co-workers. The VE opined that, if the problems were frequent enough, it would preclude permanent employment. (Tr. 91-92)

## III. <u>**ALJ's Decision**</u>

In assessing whether Plaintiff was disabled, the ALJ followed the required five-step process laid out in the Commissioner's regulations. The ALJ found that Plaintiff's last date insured was September 30, 2010. (Tr. 13) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his alleged onset of disability—August 26, 2010. (Id.) At step two, the ALJ found that Plaintiff had the following severe impairments through his date last insured: (1) bipolar disorder type 1; (2) alcohol and substance dependence; (3) type 1 diabetes; and (4) history of lumbar fracture. (Tr. 14) The ALJ also found that Plaintiff's hypertension was non-severe, and that his alleged cognitive disorder was non-medically determinable. (Id.)

At step three, the ALJ found that none of Plaintiff's impairments—whether considered alone or in combination—met or equaled a listed impairment. (Tr. 14-16) Regarding Plaintiff's back/lumbar impairment, the ALJ found that Listing 1.04 was not met. Similarly, the ALJ concluded that Plaintiff's diabetes did not meet Listing 9.00.

As for Plaintiff's mental impairments, the ALJ found that Plaintiff did not meet or equal Listings 12.04 and 12.09. (Tr. 15-16) The ALJ found that Plaintiff only had mild restrictions regarding his activities of daily living, and moderate restrictions regarding social functioning and concentration, persistence, or pace. (Tr. 15-16) The ALJ found Plaintiff had no episodes of decompensation of an extended duration. (Tr. 16)

Prior to completing step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to –

7

perform light work as defined in 20 CFR 404.1567(b) in that he can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk 6 hours out of an 8 hour workday, with normal breaks; can sit 6 hours out of an 8 hour workday, with normal breaks; except he cam10t climb ladders, ropes, and scaffolds. He can occasionally climb ramps and stairs. He can no more than occasionally stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to extreme cold, vibration, and work hazards, such as unprotected heights and being around dangerous, moving machinery. He is able to understand, remember, and carry out simple instructions, consistent with unskilled work, within a low stress environment, where there are no strict production quotas, and he would not be subject to the demands of fast-paced production work. In other words, work is by the shift and not by the hour. He is able to perform only simple decision-making, related to basic work functions, and can tolerate only minor, infrequent changes in the workplace. He can have occasional contact with coworkers and supervisors but no contact with the general public.

(Tr. 16-17)

In making this determination, the ALJ also made an adverse determination regarding Plaintiff's credibility. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible …." (Tr. 17-18) More specifically, the ALJ found Plaintiff's allegations of a disabling mental condition "not entirely credible." (Tr. 18) Although the longitudinal medical evidence in the record "corroborates [Plaintiff's] allegations of bipolar disorder, as well as alcohol and substance dependence[,] [t]he overall evidence supports that [Plaintiff's] mental condition improved dramatically when he was compliant with treatment and not drinking alcohol." (Id.) In making this finding, the ALJ considered medical evidence from July 2009 through November 2010.

Regarding Plaintiff's diabetes, the ALJ acknowledged Plaintiff's history of uncontrolled diabetes, but noted that Plaintiff's hypoglycemic episodes occurred when he was "non-complaint with treatment and abusing alcohol." (Tr. 19) Therefore, the ALJ found Plaintiff's allegations

8

concerning his diabetes not entirely credible. (Id.) In making this finding, the ALJ considered medical evidence from October 2009 through December 2011.[6]

The ALJ articulated no specific adverse credibility finding regarding Plaintiff's allegations concerning his lumbar back impairment. (Tr. 20-21)

The ALJ gave only little weight to the opinions of Dr. Michael Stacy, Ph.D., and Dr. Jason Cafer, M.D., because these opinions were rendered "well after the period in question in [Plaintiff's] case." (Tr. 21) As for the opinions of Kina St. Clair, Plaintiff's case manager, the ALJ noted that, while those opinions were supportive of Plaintiff's allegations, they were not consistent with the other evidence and observations of medical providers in this case. (Id.) Thus, the case manager's third party report was not given significant weight. (Id.)

At steps four and five, and based on the testimony of the VE, the ALJ concluded that, even though Plaintiff could not return to his past relevant work, there existed other jobs that Plaintiff could still perform with his RFC. Those jobs included cleaner/housekeeper and laundry sorter. (Tr. 21-22) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

**I.** **Summary of Issues Presented for Review**

As noted above, Plaintiff was approved for SSI benefits, but not for DIB benefits. As Plaintiff's brief suggests, he is no doubt disabled, but the question that must now be resolved is one of onset—whether Plaintiff was disabled as of August 26, 2010, and before his date last insured on September 30, 2010. In this regard, Plaintiff's arguments focus on his mental impairments.

---

[6] The ALJ noted "the longitudinal record supports that [Plaintiff's] diabetes can generally be controlled when he is compliant with medication and not drinking alcohol excessively." (Tr. 20)

9

Plaintiff contends that the ALJ made specific three errors. Plaintiff first argues that the ALJ should have consulted a medical advisor. Plaintiff contends that the ALJ erred in concluding that his cognitive disorder was not a medically determinable impairment because a 2009 scan revealed no neurologic defect. According to Plaintiff, the ALJ should have requested an analysis of whether Plaintiff's symptoms could have begun earlier. (ECF No. 22 at 9) Plaintiff next contends that the ALJ erred in failing to give any weight to the lay evidence regarding onset. In this regard, Plaintiff focuses on the reports from his case manager—Kina St. Clair. Similarly, Plaintiff argues that the other evidence supports a conclusion that Plaintiff had been disabled a long time, citing the January 2010 suicide attempt and the November 2010 hospitalization. Finally, Plaintiff contends that the ALJ failed to adhere to the Commissioner's regulations regarding Plaintiff's alcohol abuse. (ECF No. 22 at 10, citing 20 C.F.R. § 404.1535)

The Commissioner contends that: (1) Plaintiff failed to meet his burden of proving disability; (2) the ALJ properly considered the longitudinal record and, therefore, the progressive nature of Plaintiff's impairments; and (3) the ALJ properly addressed Plaintiff's alcohol abuse. Regarding this last point, the Commissioner contends that the ALJ did not find Plaintiff disabled with the effects of alcohol included, so it was not necessary to consider whether he would remain disabled if the effects of alcohol were removed from consideration.

**II.     Standard of Review and Analytical Framework**

To be eligible for DIB benefits, a claimant must prove that she is disabled within the meaning of the Act. See Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)). See also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue,

964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016); McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## III. Treatment of Plaintiff's Alcohol Abuse

In most respects, the ALJ's decision in this matter is well-organized and supported by substantial evidence on the record as a whole. The treatment of Plaintiff's substantial impairment of alcohol and substance dependence, however, is ambiguous. As explained below, it is not clear whether the ALJ properly adhered to the Social Security Administration's regulations for determining disability when substance abuse is a factor.

In 1996, Congress amended the Social Security Act to eliminate alcohol or drug abuse as a basis for obtaining SSI or DIB benefits. See 42 U.S.C. § 423(d)(2)(C) (DIB benefits) and 42 U.S.C. § 1382c(a)(3)(J) (SSI benefits). See also Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010) (citing statutes). Complementary regulations were promulgated to implement this change. In DIB cases, 20 C.F.R. § 404.1535 dictates the following process for determining whether drug addiction or alcoholism plays a contributing material factor in the analysis:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
>> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>>
>> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>>
>>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

There is no dispute in this case that Plaintiff has a substantial impairment due to alcohol abuse. Further, it is Plaintiff's burden to prove that his alcoholism "was not a contributing factor material to the disability determination." Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003) (citing Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002)). But the ALJ has the responsibility to follow the regulations and develop "a full and fair record in the non-adversarial administrative proceeding." Id. (citing Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002)).

In Brueggemann, "the ALJ's decision did not reflect the Commissioner's regulations outlining how to account for substance use disorders in disability determination proceedings." Id. (citations omitted). For example, the ALJ's decision did not cite the relevant regulation. Id. at 694. The Commissioner, however, suggested that any error was a harmless one, in the nature "'of opinion writing' rather than law." Id. at 693-94, 695. In particular, the Commissioner argued that any legal error was harmless because the claimant's "alcoholism caused the mental health limitations of which he complains. Therefore, even if the ALJ had followed the required procedure, the ALJ would have found alcoholism as a contributing factor material to the determination of disability." Id. at 695.

The Eighth Circuit rejected the Commissioner's contention in Brueggemann. According to the Court, "[t]he nature of the ALJ's abbreviated decision-making on the alcoholism issue deprives us (and the Commissioner) of a solid record on this point." Id.

Cases subsequent to Brueggemann, however, have applied the harmless error standard when an ALJ fails to steadfastly adhere to the Commissioner's regulations regarding substance

abuse and alcoholism. In <u>Watkins v. Astrue</u>, for example, a district court affirmed the denial of benefits to a DIB claimant. See 2010 WL 3360428 (D. S.D. Aug. 23, 2010). In <u>Watkins</u>, like <u>Brueggemann</u>, the ALJ did not cite or discuss the relevant regulation concerning alcoholism—20 C.F.R. § 404.1535. <u>Id.</u> at *3-4. In <u>Watkins</u>, however, the ALJ did not find the claimant's alcoholism to be a severe impairment. <u>Id.</u> at *2, *3. The ALJ found that the claimant's depression was only present when he was drinking and, therefore, the claimant did not have a severe impairment of depression. <u>Id.</u> at *4. The court in <u>Watkins</u> found that the ALJ committed legal error, but distinguished <u>Brueggemann</u>. In particular, that court deemed the ALJ's error harmless because the court found no evidence in the record that the claimant would be disabled independent of his alcoholism. <u>Id.</u>

In the present case, like both <u>Brueggemann</u> and <u>Watkins</u>, the ALJ did not mention the relevant regulation. The ALJ performed a collapsed and truncated analysis, considering Plaintiff's alcohol dependence in connection with the ALJ's credibility determination as well as the determination of Plaintiff's RFC. It is in connection with the RFC determination that the ALJ erred.

The ALJ did not first determine whether Plaintiff was disabled with the effects of alcoholism included. Rather, the ALJ's decision addresses and, to an extent, discounts the effects of alcohol in piecemeal fashion. For example, when considering Plaintiff's January 2010 suicide attempt, the ALJ's decision states "[t]reatment notes reflected that [Plaintiff] had 'heavy alcohol intake' the night before [the suicide attempt], then cut himself with a box cutter across his right neck when he awoke in the morning …." (Tr. 18) Similarly, when considering Plaintiff's November 2010 court-ordered hospitalization, the ALJ's decision states:

> [Plaintiff] spent eight days in the hospital undergoing therapy and medication management. At the time of his admission to the hospital, [Plaintiff] reported that his girlfriend had recently left him and taken their baby with her. He reported that

15

> he had recently been drinking alcohol excessively …. In fact, he reported drinking a fifth of vodka on a daily basis for the previous two years.

(Tr. 18-19) In concluding her discussion of Plaintiff's mental health limitations, the ALJ stated Plaintiff's "mental health treatment history strongly supports that his mental status greatly improved when he was compliant with treatment and he was not drinking alcohol." (Tr. 19)

In the present case, although it is a close question, the undersigned cannot say definitively that the ALJ's treatment of Plaintiff's alcohol dependence reflects a harmless error in opinion writing technique. In contrast to Watkins, there is no dispute in this case that, during the relevant time period, Plaintiff suffered from the severe impairments of both alcohol dependence and mental illness (bipolar disorder type 1). (Tr. 14) Moreover, this case presents a very unique background because Plaintiff was found to be not disabled prior to his current onset date, but was later found to be disabled after his date last insured. Thus, it would seem even more important to ensure that the regulations are precisely adhered to in this matter.

The undersigned is mindful of the fact that the ALJ is likely to come to a similar conclusion on remand. See Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). In this specific case, however, the legal error in failing to acknowledge and follow the regulations concerning alcohol dependence deprives the ALJ's decision of substantial evidentiary support. The undersigned concludes that, despite the noted legal error, the ALJ's adverse credibility determination in this matter should be sustained.[7] Therefore, the matter should be remanded so

---

[7] It should be noted that an ALJ may properly consider alcohol or other substance abuse issues as part of an otherwise proper credibility analysis. See Crawford v. Colvin, 809 F.3d 404, 411 (8th Cir. 2011) (finding a claimant's credibility properly discounted in view of "previous failure to comply with medical treatment; continued tobacco and alcohol use; occasional cocaine use; and minimal work history"); Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010). In the present case, to the extent the ALJ factored Plaintiff's substance abuse into the adverse credibility determination, there was no error. Indeed, the ALJ adhered to the credibility framework required by the regulations and accepted by the Eighth Circuit, see, e.g., Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing in Polaski v. Heckler, 739 F.2d 1320, 1322

16

that Plaintiff's alcohol dependence and mental health conditions can be properly considered in light of the requirements of 20 C.F.R. § 404.1535.

Accordingly,

**IT IS HEARBY ORDERED** that, the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall be entered this day.

      /s/ ***John M. Bodenhausen***
      JOHN M. BODENHAUSEN
      United States Magistrate Judge

Dated this  15th   day of   December  , 2016.

---

(8th Cir. 1984); 20 C.F.R. § 416.929(c)), and gave good reasons for discounting Plaintiff's credibility. See, e.g., Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").